UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Samuel Winbush,
                Plaintiff,

                                            **Hon. Hugh B. Scott**
                                            05CV419
                                            (Consent)

                v.                                        **Decision**
                                                        **&**
                                              **Order**

Harold Wetzel et al,
                Defendants.

     Before the Court is the defendants' motion for summary judgment (Docket No. 36).

**Background**

     The plaintiff, Samuel Winbush ("Winbush") alleges that he was assaulted by corrections officers on October 17, 2002 while incarcerated at the Southport Correctional Facility. He commenced this action under 42 U.S.C. § 1983 alleging that his Eighth Amendment rights were violated. More particularly, Winbush asserts that on that date, a search of the plaintiff's cell was conducted by defendants Kevin Aiken and Dennis McKernan (and well as other officers). (Docket No. 1 at page 8; Docket No. 44 at ¶ 1-2). According to Winbush, as he was removed from his cell he informed Aiken and McKernan that his handcuffs were on too tight. Winbush claims that in response to this statement, McKernan "slammed" the plaintiff's head into a concrete wall. Further, the plaintiff alleges that he was then taken into a shower area where Aiken, McKernan and defendant Paul Jayne continued to assault him. The plaintiff alleges that

defendants Harold Wetzel and Mark Shumaker witnessed the assault but failed to take any action.  Winbush alleges that he immediately requested medical attention but was required to wait until the following day to receive medical attention. (Docket No. 1 at 8-11; Docket No. 44 at ¶¶ 4-10).

The defendants have filed a motion for summary judgment asserting that the alleged assault did not occur and that there is no evidence of any injury suffered by Winbush.

## Discussion

**Standard of Review**

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law.  See Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F. 2d 186, 188 (2nd Cir. 1992) citing Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The court must draw all reasonable inferences in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the non-moving party. See Taggart v. Time Inc., 924 F.2d 43, 46 (2d Cir.1991); Howley v. Town of Stratford, 217 F.3d 141 (2nd Cir. 2000). However, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit Information, Co., 970 F.2d 1110, 1112 (2nd Cir. 1992), citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

General Electric Company v.  New York State Department of Labor, 936 F.2d 1448, 1452 (2nd Cir. 1991), quoting Anderson v.  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "The non-

moving party must come forward with enough evidence to support a jury verdict ... and the ... motion will not be defeated merely ... on the basis of conjecture or surmise." Trans Sport, supra, 964 F.2d at 188, quoting Bryant v. Maffucci, supra.  If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are properly controverted by the non-moving party." Glazer v. Formica Corp., 964 F.2d 149, 154 (2nd Cir. 1992), citing Dusanenko v. Maloney, 726 F.2d 82 (2nd Cir. 1984).  The Court's responsibility in addressing a summary judgment motion is identifying factual issues, not resolving them.  See Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2nd Cir. 1990). However, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2nd Cir. 2000) quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Defendant's Motion**

The "core judicial inquiry" in cases of alleged excessive force by a prison official is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); Reeb v. Irvin, 2000 WL 914136 (W.D.N.Y. 2000).  If the latter, "contemporary standards of decency always are violated" irrespective of whether significant injury is present. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, at 9; see also Corselli v. Coughlin, 842 F.2d 23, 26 (2d Cir.1988) (if force used was "unreasonable or excessive," it matters not that injuries were not "permanent or severe"). At the same time, "not every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, at 9.

3

In the case at hand, the defendants assert that no force was used on Winbush on October 17, 2002; asserting, in effect that he fabricated the incident.  Thus, the instant motion is based upon the argument that there is no evidence, other than the plaintiff's self-serving conclusory allegations, that force was used against Winbush. (Docket No. 37 at page 3).  In support of this argument, the defendants cite several cases in which Eighth Amendment claims were dismissed at the summary judgment stage because they were based solely upon the uncorroborated allegations of the plaintiff and refuted by sworn affidavits from the defendants. (Docket No. 37 at pages 5-8).   The defendants also point to the fact that the medical records do not reflect injuries consistent with the plaintiff's allegations of assault.  In this regard, the defendants cite the Affidavit of Robert Brandt, R.N. and attached medical records which reflect that the plaintiff was seen by medical personnel on each day between October 16, 2002 and October 29, 2002. The medical record for these dates state that although the plaintiff complained of an "assault" on October 17, 2002, Winbush appeared in good health with "no obvious bruises, scratches, lacerations. Moving well; good [range of motion]." (Docket No. 40, Exhibit A).[1]

In opposition to the instant motions, however, the plaintiff has presented an affidavit by inmate Johnathan Wynn. (Docket No. 43).  Wynn states that on October 17, 2002, he "observed C.O. McKernan slam inmate Winbush B1-2 cell head into the wall and said 'don't never tell me I put your fucking cuffs on tight.' "  Wynn testified that he asked: "why you assaulting that inmate;" to which Aiken responded "shut up nigger."  According to Wynn, he then asked Shumaker why he was just standing there while his officers assaulted Winbush; to which

---

[1]  These records reflect that Winbush was a daily visitor to sick call and was verbally abusive to the medical staff, repeatedly referring to them as a "piece of shit" or "asshole" (see Docket No. 37, Exhibit A,  notes for October 16, 2002; October 17, 2002; October 18, 2002; October 22, 2002). According to the records, on October 23, 2002, Winbush demanded to be examined with the door closed and without an officer present. When advised that security policies preclude such an examination from taking place, Winbush refuse to be examined and walked out of the office. (See Docket No. 37, Exhibit A, note for October 23, 2002).

Sumaker allegedly responded: "I don't see nothing."  Wynn claims that later on October 17, 2002, he observed Winbush request emergency sick call and that the plaintiff "had a big lump on the left side of his head." (Docket No. 43 at page 1 (paragraphs unnumbered)).

A question of fact exists as to whether or not force was used against the plaintiff on October 17, 2002.  The cases cited by the defendants are inapposite inasmuch as Wynn's affidavit corroborates the plaintiff's claim that force was used against him on that date.  It is not for this Court, upon a motion for summary judgment, to assess the credibility of the allegations asserted by the plaintiff or the corroborating affidavit from Wynn. Similarly, the fact that the medical records do not reflect any injury to Winbush does not end the inquiry under Hudson. See also Messina v. Mazzeo, 854 F.Supp. 116, 133 ( E.D.N.Y.,1994)(the medical records which indicate no serious injury could not alone support a motion for summary judgment; the minimal extent of a plaintiff's injury is not a bar to a Section 1983 cause of action against a person acting under color of state law) citing  Robison v. Via, 821 F.2d 913 (2d Cir.1987). Here, the allegations asserted by Winbush and Wynn are sufficient, if found to be true by a trier of fact, to support a finding that the defendants acted maliciously to cause Winbush harm.  The defendants have not presented the Court with any basis upon which to conclude that, notwithstanding Wynn's affidavit, no question of fact exists as to the alleged use of force in this case.

Based on the above, the defendants' motion for summary judgment is denied.  A conference shall take place on **April 15, 2008 at 3:00 p.m.** to discuss the status of this case and set a trial date.

So Ordered.

*/s/ Hugh B. Scott*
United States Magistrate Judge
Western District of New York

Buffalo, New York
March 17, 2008

5